USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#:
DATE FILED: 8-17-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BIBA KAJTAZI,

         Movant,

  -against-

UNITED STATES OF AMERICA,

        Respondent.
-----------------------------------------------------------x

17-cv-9301 (ALC)
16-cr-289 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Biba Kajtazi ("Kajtazi" or "Defendant"), proceeding pro se, petitions this Court to correct, vacate, or set aside his conviction pursuant to 28 U.S.C. § 2255. Kajtazi challenges his conviction on three grounds alleging: (I) his counsel was ineffective for failing to file a notice of appeal; (II) his counsel was ineffective for failing to argue for a sentence reduction pursuant to Amendment 782 and Amendment 784 of the U.S. Sentencing Guidelines; and (III) his counsel was ineffective for failing to argue for a sentence reduction because of poor conditions at the Metropolitan Correctional Center ("MCC"). For the reasons explained herein, Kajtazi's petition is DENIED.

**BACKGROUND**

The following factual summary is derived substantially from the Government's response to the Petition.

Kajtazi and co-defendants Kushtrim Demaj, Petrit Bicaj, Musa Demaj, and Chad Miele, were charged in Indictment S3 16 Cr. 289 (the "Indictment"). Indictment, 16-cr-0289, ECF No.

1                  **COPIES MAILED**

5.[1] Count One of the Indictment charged defendants with conspiring to distribute and possess with the intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841 (b)(1)(A). Id. at ¶ 4-6. Count One imposed a mandatory minimum sentence of ten-year imprisonment and a maximum sentence of lifetime imprisonment. Kajtazi faced a 20-year mandatory minimum sentence due to his prior federal conviction for drug trafficking.

The Indictment alleges that Kajtazi was involved in a drug-trafficking conspiracy, in which he travelled to Colombia several times to procure cocaine, and deliver that cocaine to his co-defendant Demaj and/or Demaj's customer. Pre-Sentence Report ("PSR") at ¶ 15, 22, 25, 32, 16-cr-0289, ECF No. 225. Some phone calls discussing the importation of cocaine were intercepted by law enforcement. Id. at ¶ 32. Over the course of those calls, Kajtazi revealed to Demaj that 2 kilograms were located inside a particular piece of luggage. Id. Kajtazi later caused a test package to be sent from Colombia. Id. He also obtained "burner" cellphones for use while in Colombia. Id. at ¶ 34. In April 2016, law enforcement arrested Kajtazi in Florida. PSR at 1.

On May 9, 2017, Kajtazi appeared with his counsel, Gerald McMahon, and, in accordance with a plea agreement (the "Plea Agreement"), pleaded guilty to Count One of the Indictment, which imposed a maximum sentence of 20 years imprisonment and no mandatory minimum sentence. As specified in the Plea Agreement, Defendant agreed to not file a direct appeal or bring a collateral challenge, including an application under 28 U.S.C. § 2255, to any sentence within the Stipulated Guidelines Range of 41 to 51 months imprisonment. Plea Agreement at 4, 16-cr-0289, ECF No. 257. However, the Defendant maintained his right to bring a claim of ineffective counsel through a direct appeal or collateral challenge.

---

[1] Some documents related to this Motion are docketed under the criminal case number (16-cr-0289) and others are docketed under the civil case number (17-cv-9301). Citations to the docket are distinguished here by case number.

2

Kajtazi's sentencing hearing was held on September 8, 2017. Kajtazi was sentenced to 43 months' imprisonment, within the Stipulated Guidelines Range, and three-years' supervised release, with a mandatory $100 special assessment. Sentencing Transcript ("Sentencing Tr.") at 35:8-14, 16-cr-0289, ECF No. 217. The Court during the sentencing hearing also advised Kajtazi that there are time limits on his right to file an appeal. Id. at 38:5-10, 39:18-23. Kajtazi did not receive any role enhancement or mitigating role adjustment according to the Guidelines calculation in the Plea Agreement. In addition, a role enhancement or mitigating role adjustment was not sought at the sentencing hearing nor was it recommended by the Probation Department. PSR at ¶ 36.

Within days after the sentencing hearing and before September 19, 2017, Kajtazi communicated through text message with McMahon. Kajtazi asked McMahon if the waiver of appeal provision in his Plea Agreement is still in effect because the Court during sentencing informed Kajtazi that he has the right to appeal. Affidavit of Gerald McMahon, dated Feb. 20, 2018 ("Gerald McMahon Aff. 02/20/2018") at ¶ 6, 17-cv-9301, ECF No. 9. McMahon responded the same day telling Kajtazi the waiver of appeal provision is in effect and that the Court's "mention of the right to appeal was a reference to rights granted by statute to all criminal defendants." Id. Kajtazi responded back asking, "[s]o what your saying is, there is nothing I can appeal?" Id. McMahon responded back, "[c]orrect." Id. Kajtazi did not further communicate with McMahon after this text message conversation. Id. at ¶ 7.

Furthermore, Kajtazi's wife Elizabeth Kajtazi avers that around September 9th or 10th, 2017, she called McMahon to "inform him Biba Kajtazi wanted to appeal his sentence." Affidavit of Elizabeth Kajtazi ("Elizabeth Kajtazi Aff.") ¶ 5, 17-cv-9301, ECF No. 11. She further alleges that she asked McMahon to "file the appeal notice" and McMahon responded

3

"that there is nothing to appeal." Id. McMahon alleges that he received no such phone call from Elizabeth Kajtazi. Gerald McMahon Aff. 03/26/2018 ¶ 6. McMahon did not file Kajtazi's notice of appeal to appeal Kajtazi's sentence within the time limits a notice must be filed. Pet'r's Reply at 2, 17-cv-9301, ECF No. 11. As a result, Kajtazi was not able to appeal his sentence. Id.

On or about November 27, 2017, while in custody, Kajtazi timely filed the instant petition pursuant to 28 U.S.C. § 2255. Pet. at 1, 17-cv-9301, ECF No. 1; see 28 U.S.C. § 2255(f)(1)(f) (providing that petition must be filed within the "1-year period of limitation" that begins to run "from the date on which the judgment of conviction becomes final" or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence").

## LEGAL STANDARD

### A. 28 U.S.C. § 2255

Section 2255 allows a person convicted in federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . ." 28 U.S.C. § 2255(a). Under § 2255, a court may grant relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)) (internal quotation marks omitted).

When considering a § 2255 motion, a district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." Id. at 131. If it "plainly appears" from the motion, exhibits, and record of prior proceedings that the habeas petitioner is not entitled to relief, "the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C. foll. § 2255.

Finally, in ruling on a § 2255 motion, the Court construes a pro se petitioner's submissions liberally and interprets them "to raise the strongest arguments that they suggest." Fulton v. Goord, 591 F.3d 37, 43 (2d. Cir. 2009) (quoting Green v. United States, 280 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted).

**B. Ineffective Assistance of Counsel**

In order to prevail on an ineffective assistance of counsel claim, the movant must demonstrate that (1) his counsel's performance "fell below an objective standard of reasonableness" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688-694 (1984). "At the second step of analysis, a petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit." Harrington v. United States,

5

689 F.3d 124, 130 (2d Cir. 2012). Counsel is granted "wide latitude" and there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. As the Second Circuit has noted, "[t]he Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

## DISCUSSION

### I. Counsel's Failure to File a Notice of Appeal

Kajtazi alleges ineffective assistance of counsel for his counsel's failure to heed his directive to file a notice of appeal. Pet. 4. For the reasons that follow, the Court rejects this claim.

"[A] lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable." Campusano v. United States, 442 F.3d 770, 773 (2d Cir. 2006) (emphasis added). "A defendant who establishes that his attorney failed to file a direct appeal despite being instructed to do so is entitled to a finding that his attorney rendered professionally unreasonable assistance, a conclusive presumption of prejudice, and an opportunity to file a direct appeal .... The presumption of prejudice applies even if the defendant has signed a plea agreement waiving the right to appeal." Washington v. United States, No. 13-CV-360 (SLT), 2014 WL 7399302, at *4 (E.D.N.Y. Dec. 30, 2014) (internal citations omitted).

Here, Kajtazi has not demonstrated that he specifically instructed McMahon to file a notice of appeal. According to McMahon's affidavit dated February 2018, Kajtazi asked a question about appealing his sentence; however, he did not directly ask McMahon to file an appeal. Gerald McMahon Aff. 02/20/2018 ¶ 6. Kajtazi, in reply, does not appear to dispute the content of his conversation with McMahon. Instead, in response, he claims that his wife requested that McMahon file the appeal, and has submitted an affidavit from his wife indicating

6

the same. Elizabeth Kajtazi Aff. ¶ 5. However, a supplemental affidavit from McMahon flatly refutes this suggestion, indicating that Ms. Kajtazi never asked him to file a notice of appeal on her husband's behalf. Gerald McMahon Aff. 03/26/2018 ¶ 6. Therefore, Kajtazi never made any specific instruction to McMahon to file a notice of appeal.

An evidentiary hearing is not warranted here because McMahon's detailed affidavits conclusively show that Kajtazi did not specifically request that McMahon file a notice of appeal. Kajtazi has not presented any evidence other than self-serving allegations that he requested McMahon file a notice of appeal. See, e.g., Padin v. United States, 521 F. App'x 36, 38 (2d Cir. 2013) (upholding district court's refusal to hold an evidentiary hearing because there was sufficient evidence, including written affidavits, the plea and sentencing transcripts, and the Court's observations of the diligent representation of Padin to find that petitioner did not ask his counsel to file a notice of appeal); Mitchell v. United States, No. 14-CR-051-A, 2017 WL 2790647, at *2 (W.D.N.Y. June 28, 2017) (rejecting petitioner's request for an evidentiary hearing because petitioner's "bare assertions" alone do not justify an evidentiary hearing); Washington, 2014 WL 7399302, at *4 (declining to hold an evidentiary hearing because petitioner's claim was based on "self-serving and improbable assertions."); United States v. Williams, No. 04-CR-178 (DC), 2009 WL 1162382, at *3 (S.D.N.Y. May 1, 2009) (declining to hold an evidentiary hearing the affidavits from both petitioner and petitioner's counsel adequately supplemented the record); Benvenuto v. United States, No. 01-CV-2642 (ILG), 2001 WL 1590515, at *5 (E.D.N.Y. Nov. 7, 2001) (rejecting petitioner's request for an evidentiary hearing because petitioner's assertions alone do not justify an evidentiary hearing).

In addition, the lack of a dispute as to the contents of Kajtazi's communications with McMahon render his reliance on United States v. Harrison, 48 F. Supp. 3d 381 (N.D.N.Y. 2014)

7

misplaced. *See* Pet'r's Reply at 3. In Harrison, the petitioner alleged that his counsel was ineffective for failing to file a notice of appeal despite being instructed to do so. 48 F. Supp. 3d at 390. Petitioner alleged he sent his counsel three or four letters asking about the status of his appeal. Id. Petitioner's counsel, through sworn affidavits, testified that she received a letter from petitioner; however, she did not disclose the contents of that letter. Id. at 392. The Court reasoned that since petitioner's counsel did not disclose the contents of the letter, petitioner established by a preponderance of the evidence that he did request his counsel to file a notice of appeal and "her failure to do so constituted ineffective assistance of counsel." Id. Unlike Harrison, there is no dispute as to the substance of the communications that occurred between McMahon and Kajtazi. Kajtazi communicated with McMahon through text message within days after his sentencing hearing and the contents of that communication are in the record. Gerald McMahon Aff. 02/20/2018 ¶ 6. Those text messages, though conveying that Kajtazi inquired about the possibility of appealing, do not reflect that Kajtazi directed his counsel to file an appeal. Thus, Harrison is not instructive here.

In any event, "even where a defendant does not ask his attorney to file an appeal, the attorney has a constitutionally imposed duty to consult with the defendant about whether he wants to file an appeal if ... there is reason to think either (1) that a rational defendant would want to appeal [] or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Padin, 521 F. App'x at 38 (internal citations omitted). In making this determination, "a court must consider all the relevant factors, including whether the conviction followed a trial or a guilty plea, whether the defendant received the sentence bargained for as part of a plea, and whether the plea expressly reserved or waived some or all appeal rights." Id.

Even setting aside the fact that unrefuted documentary evidence suggests that McMahon did consult with Kajtazi regarding his appellate rights, a rational defendant in Kajtazi's case would not want to file an appeal. Kajtazi's conviction followed a guilty plea.. His sentence was bargained for as part of the plea agreement since Kajtazi received a sentence of 43 months, which is at the lower end of the Guidelines range, and is significantly lower than the 20-year mandatory minimum Kajtazi faced due to a prior federal conviction. Plea Agreement at 3. Moreover, the Plea Agreement expressly waived Kajtazi's right to file an appeal for a sentencing reduction or adjustment. Plea Agreement at 4. Therefore, a rational defendant would not want to file an appeal and accordingly, McMahon did not act in an unreasonable and unprofessional manner when he did not file the notice of appeal.[2]

Since Kajtazi never made any specific instruction to McMahon to file a notice of appeal and because a rational defendant in Kajtazi's case would not want to file a notice of appeal, the Court rejects Kajtazi's claim for ineffective assistance of counsel for failure to file a notice of appeal.

## II. Counsel's Failure to Argue for a Sentence Reduction under Amendment 782 and Amendment 794 of the U.S. Sentencing Guidelines

Kajtazi alleges his counsel was ineffective for failing to argue for a sentence reduction under Amendment 782[3] and Amendment 794[4] of the U.S. Sentencing Guidelines. Pet. 5. Applying the Strickland standard, the Court concludes that defense counsel's alleged failure to

---

[2] This conclusion is buttressed by the Court's own observations of McMahon's diligent representation of Kajtazi as well as the interactions between Kajtazi and his attorney.

[3] Amendment 782 was enacted on November 1, 2014, and downwardly adjusted the base offense levels in the Drug Quantity Table in the U.S. Sentencing Guidelines Manual § 2D1.1 by two levels. U.S. Sentencing Guidelines Manual app. C (Supp 2016), at 70. A defendant's recommended sentencing range is determined using the offense level calculated with The Drug Quantity Table in U.S. Sentencing Guidelines Manual § 2D1.1.

[4] Amendment 794 pertains to U.S. Sentencing Guidelines Manual § 3B1.2, which identifies factors for courts to consider when deciding how much of a mitigating role adjustment a defendant should receive. U.S.S.G § 3B1.2 decreases a defendant's offense level depending on whether the defendant played a minimal or minor role in the criminal activity.

9

argue for a sentence reduction under Amendment 782 and Amendment 794 of the U.S. Sentencing Guidelines does not amount to ineffective assistance.

### A. McMahon's not arguing for a sentence reduction under Amendment 782 and Amendment 794 did not fall below an objective standard of reasonableness.

First, during sentencing, the Court determined Kajtazi's offense level using the Drug Quantity Table in U.S. Sentencing Guidelines Manual § 2D1.1 updated by Amendment 782. It is unclear how McMahon's performance could fall below an objective standard of reasonableness when all parties already accounted for Amendment 782. Second, McMahon acted reasonably when he decided not to argue for a mitigating role adjustment pursuant to the factors in Amendment 794. The Plea Agreement specifically indicated that "neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein." Plea Agreement at 3. McMahon was precluded from arguing for a mitigating role adjustment, or else risk breaching the Plea Agreement. See, e.g., Harris v. United States, No. 00-CR-105 (RPP), 2005 WL 1925435, at *5 (S.D.N.Y. Aug. 10, 2005) (denying similar ineffectiveness claim because the plea agreement prohibited petitioner's pursuing certain sentencing reductions, counsel's arguing point would render plea agreement void, resulting in petitioner facing higher sentence). Thus, Kajtazi has not demonstrated that his counsel's performance fell below an objective standard of reasonableness.

### B. There is no reasonable possibility of a changed outcome had these arguments been presented.

As noted above, Kajtazi agreed not to seek a departure or adjustment from the sentencing guidelines when he accepted the terms of the Plea Agreement voluntarily and with advice of counsel. Plea Agreement at 3. During the sentencing hearing, all parties took into account Amendment 782 and any mitigating role adjustment depending on the factors in Amendment 794

that Kajtazi was eligible to receive. Thus, because Kajtazi has not demonstrated that the results of the sentencing hearing would have been different, he cannot establish prejudice. See Strickland, 466 U.S. at 693-94; see also, e.g., Trent v. United States, No. 09-CV-5546 (SJF), 2012 WL 157288, at *4 (E.D.N.Y. Jan. 17, 2012) (holding that petitioner was not prejudiced because he did not present any evidence demonstrating that but for his counsel's unprofessional errors, the results of the sentencing hearing would have been different). For these reasons, this argument lacks merit.

## III. Counsel's failure to argue for a sentence reduction due to the conditions of Kajtazi's confinement at MCC.

Kajtazi alleges his counsel was ineffective for failing to argue for a sentence reduction due to the conditions of his confinement at MCC. Pet. 7. Kajtazi asserts the conditions at MCC are extraordinary because he witnessed fights amongst inmates, lacked legal visits and assistance, lacked cellphone usage, and was confined to a cell block 24-hours per day. Kajtazi alleges that these conditions compelled him to accept a guilty plea in the hopes to get removed from MCC. Id. For the reasons that follow, this argument lacks merit.

### A. McMahon's decision to not argue about MCC conditions did not fall below an objective standard of reasonableness.

During the sentencing hearing, McMahon discussed Kajtazi's family connections and ties to the community instead of discussing the conditions at MCC. Sentencing Tr. at 15:7-14; 16: 7-17). Courts have found that a counsel's "strategic decision to focus on [other mitigating sentencing factors] ... rather than conditions of confinement does not fall below an objective standard of reasonableness under prevailing professional norms." Gonzalez v. United States, No. 13-CV-7588 (SAS), 2014 WL 4494020, at *4 (S.D.N.Y. Sept. 12, 2014). McMahon employed a reasonable strategic decision to focus on Kajtazi's family connections and to not focus on the

MCC conditions. As a result, Kajtazi received a sentence towards the bottom of the Guidelines range.

Declining to make this argument was entirely sensible because the conditions at MCC of which Kajtazi complains do not justify a departure. Courts have considered downward departures from the Guidelines "where the conditions [of confinement] ... are extreme to an exceptional degree and their severity falls upon the defendant in some highly unique or disproportionate manner." United States v. Mateo, 299 F. Supp. 2d 201, 208 (S.D.N.Y. 2004). For instance, in Mateo, the Court held departure from the Guidelines was warranted because while in custody at a federal detention facility, the Petitioner was sexually abused by a prison guard and had to deliver a baby without receiving medical attention. Id. at 211. On the contrary, the conditions Kajtazi experienced, such as fights between inmates, limited cellphone usage, and confinement to a cell block, are not conditions that are too extreme or extraordinary to warrant a departure from the Guidelines.

Moreover, Kajtazi's reliance on Koon v. United States, 518 U.S. 81 (1996) is misplaced. Koon states that "[i]f a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, ... decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be highly infrequent." Koon, 518 U.S. at 96. The Koon Court set a high bar for departure from the Guidelines and the confinement conditions Kajtazi experienced do not meet that standard.

Nor would conditions of confinement have constituted a fruitful basis for a variance. Kajtazi has served extensive time in federal custody. PSR ¶¶ 53-54. Counsel's arguing for a

variance because of the hardships of incarceration would have focused the Court on the lengthy sentence Kajtazi had previously served, prompting further consideration of the possible deterrent effect of a longer sentence in this case. Thus, because defense counsel wisely chose to focus on Kajtazi's family connections and ties, rather than conditions of confinement, his performance was not objectively unreasonable.

### B. Counsel's presentation of a conditions-of-confinement argument would not alter the sentencing outcome.

"District courts have no obligation to reduce a sentence based on conditions of confinement." Brizard v. United States, No. 11-CV-6033 (JGK), 2013 WL 1809636, at *6 (S.D.N.Y. Apr. 30, 2013). Kajtazi has made no showing that the Court would have reduced his sentence based on his confinement conditions, and the Court is certainly not obligated to do so. Katjazi has already received a favorable sentence toward the bottom of the Guidelines range. Therefore, because Kajtazi has not demonstrated that, had counsel discussed the MCC conditions, there is a reasonable possibility that the sentencing outcome would have differed, he cannot show prejudice.

## CONCLUSION

For the foregoing reasons, the Court rejects Kajtazi's three claims of ineffective assistance of counsel. His § 2255 petition is, accordingly, DENIED. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253.

The Clerk of Court is directed to terminate any pending motions, enter judgment, and close the case.

**SO ORDERED.**

**Dated: August 17, 2018**
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**